# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF WISCONSIN

_____

MICHAEL SLINKER,

                  Petitioner,

    v.                                          Case No. 06-CV-390

JEFFREY ENDICOTT, Warden,
Redgranite Correctional Institution,

                  Respondent.

_____

## ORDER

On April 3, 2006, petitioner Michael Slinker filed a petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254, challenging his conviction of two counts of first-degree sexual assault of a child entered on June 2, 2000, in the Sheboygan County Circuit Court, Case No. 98-CF-434. For the reasons stated below, the court is obliged to deny the petition.

## BACKGROUND

Following a jury trial, petitioner Michael Slinker was convicted of two counts of first-degree sexual assault of a child (his daughter Jessica) in the Sheboygan County Circuit Court (Case No. 95-CF-190) and was sentenced to 20 years of imprisonment and a consecutive 10 year term of probation. Following a guilty plea, Slinker was also convicted of first-degree sexual assault of a child (his daughter Britney) and incest in Washington County Circuit Court (Case No. 95-CF-274) and was sentenced to 25 years of imprisonment, a sentence to run concurrently with the Sheboygan County sentence. Slinker faced a total period of imprisonment of 25

years. Slinker moved for a new trial in Sheboygan County, and the trial court granted the motion and vacated the conviction.

However, moving for a new trial did not prove to be a winning strategy for Slinker. After the trial court granted Slinker a new trial (Case No. 98-CF-434), the prosecutor charged Slinker with additional counts of sexual assault. Slinker pled guilty to the original two counts in exchange for a dismissal of the additional five counts. The prosecutor, who had recommended a 15-20 year sentence in the previous case, 95-CF-190, recommended a 35 year term at the sentencing in 98-CF-434. The Sheboygan County Circuit Court ultimately imposed a 20 year sentence of imprisonment and a consecutive 20 year term of probation. The court ordered that the 20 year prison sentence would run consecutively to the Washington County sentence. Slinker now faces a total period of imprisonment of 45 years.

On April 3, 2006, petitioner Slinker filed a petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254, challenging the Sheboygan County conviction (98-CF-434). Slinker set forth three grounds for relief: (1) prosecutorial vindictiveness based upon the filing of new charges and the prosecutor's sentencing recommendation of a longer period of imprisonment compared to what he previously recommended; (2) ineffective assistance of post-conviction counsel based upon counsel's recommendation that Slinker file a motion for a new trial, counsel's alleged failure to consider and reasonably evaluate the possible negative consequences of obtaining a new trial, counsel's alleged failure to advise Slinker of the possible negative consequences in a timely fashion, and counsel's failure to inform the

-2-

Sheboygan County court at sentencing that the Washington County court imposed a sentence to run concurrently with the previously imposed Sheboygan County sentence; and (3) the sentence is harsher than the sentence previously imposed, thus is presumptively vindictive and a violation of due process. Slinker seeks the following relief: "[v]acate his consecutive Sheboygan County sentence and direct that it be imposed concurrently to his Washington County sentence." (Petition ¶ 89.B).

The court finds, and the parties agree, that Slinker exhausted his state court remedies on these three claims and that Slinker timely filed his federal habeas corpus petition.

## ANALYSIS

Under the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), a federal court may grant habeas corpus relief only if the state court's decision on the merits of the petitioner's claim was "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States" or was an "unreasonable determination of the facts in light of evidence presented in the State court proceeding." 28 U.S.C. § 2254(d).

## I.    Prosecutorial Vindictiveness

Slinker argues that he was subject to prosecutorial vindictiveness in two ways: the prosecutor filed new charges after the petitioner's successful challenge to the original conviction; and the prosecutor recommended a sentence more than double what had been recommended three years earlier. *State v. Slinker*, 688 N.W.2d 783 (Wis. Ct. App. Sept. 8, 2004) (unpublished decision); (Answer, Ex. K ¶ 5).

Case 2:06-cv-00390-JPS    Filed 09/17/09    Page 3 of 23    Document 51

The Wisconsin Court of Appeals articulated the following standard in addressing a claim of prosecutorial vindictiveness:

> [W]e first must determine whether a realistic likelihood of vindictiveness exists; if indeed it does exist, then a rebuttable presumption of prosecutorial vindictiveness applies. If we conclude that no presumption of vindictiveness applies, we next must determine whether the defendant has established actual prosecutorial vindictiveness.

(Answer, Ex. K ¶ 5). The court of appeals stated that a presumption of vindictiveness arises when a prosecutor files more serious charges against a defendant after the defendant wins a new trial. (Id. ¶ 6) (citing *State v. Johnson*, 605 N.W.2d 846, 853 (Wis. 2000)). However, the court determined that the presumption did not apply in this case because "the added charges arise out of separate conduct and could have been brought at any time." (Answer, Ex. K ¶ 6) (citing *State v. Williams*, 677 N.W.2d 691, 703-04 (Wis. Ct. App. 2004)).

The court also determined Slinker did not establish actual vindictiveness because the prosecutor advanced legitimate and sufficient reasons for the additional charges. (Answer, Ex. K ¶ 8). Specifically, the prosecutor explained that he did not include the additional charges during the original proceeding because he had received information about the additional charges approximately two weeks before the start of the trial and did not wish to adjourn the trial. The prosecutor also explained that the victim wanted to pursue additional charges if she were going back to trial. Slinker argued that the prosecutor displayed actual vindictiveness by filing the motion to dismiss on the eve of trial, by filing the motion to dismiss without notice to Slinker, and by refusing to respond to overtures to resolve the case without a trial.

-4-

The court of appeals rejected Slinker's argument, finding that the record does not reflect that the prosecutor's motion was without notice and that the prosecutor timely informed Slinker that he would accept guilty pleas to the two original charges. (Id. ¶ 9).

The court of appeals also determined that the prosecutor's sentencing recommendation does not provide a basis for prosecutorial vindictiveness because it is a nonbinding recommendation to the court. (Id. ¶ 10). Furthermore, the court noted that the prosecutor was justified in recommending a stiffer sentence because he learned more details of the other assaults underlying the additional charges and he did not believe Slinker was rehabilitated to the extent that Slinker claimed. (Id.).

Slinker has not shown that the court of appeals unreasonably applied United States Supreme Court law. The petitioner argues that "the only likely explanation for the prosecutor's conduct . . . is retaliation," (Mem. of Law Supp. Pet'n for Writ at 8), and that the "various prosecutorial acts objectively have no purpose but retaliation." (Id.). However, Slinker does not attempt to refute several determinations made by the state appellate court. For example, the state court determined that the presumption of vindictiveness did not apply in this case because "the added charges arise out of separate conduct and could have been brought at any time." (Id. ¶ 6) (citing *State v. Williams*, 677 N.W.2d 691, 703-04 (Wis. Ct. App. 2004)). Slinker does not dispute the factual predicate of the court of appeals' determination nor does Slinker challenge the court of appeals' application of *Williams*, 677 N.W.2d at 703-04.

Also, the court of appeals upheld the trial court's determination that there was no actual vindictiveness based upon the prosecutor's explanation that he did not originally charge the five other counts because he did not wish to adjourn the trial and that the victim wanted to pursue additional charges if she were going back to trial. Slinker assumes that the prosecutor's only reason for adding five charges is retaliation for Slinker's successful appeal, but Slinker does not deny or address the appropriate reasons articulated by the prosecutor and the court of appeals. Similarly, Slinker does not deny or address the reasons articulated by the prosecutor and court of appeals for recommending a more severe sentence: namely, that the prosecutor learned more details of the other assaults underlying the additional charges and the prosecutor's doubt that Slinker was rehabilitated to the extent he was claiming.[1] Slinker attempts to persuade this court that the court of appeals unreasonably applied Supreme Court law but, in doing so, Slinker utterly ignores the court of appeals' analysis.

Instead, Slinker paints the prosecutor as an "intense advocate" for sexual assault victims who has a personal obsession to vindicate the victim and punish Slinker. (*See* Mem. of Law Supp. Pet'n for Writ at 8). However, the prosecutor's desire to punish is only improper if it is motivated by Slinker's exercising of his right to appeal. On the other hand, if the prosecutor added charges based upon the victim's wishes or if the prosecutor recommended a more severe sentence because

---

[1]Because Slinker fails to dispute the reasons for the prosecutor's different sentencing recommendation, the court finds its unnecessary to address the court of appeals' argument that a sentencing recommendation cannot provide a basis for a claim of prosecutorial vindictiveness because the recommendation is non-binding on the court.

he doubted Slinker's professed progress in rehabilitation or learned additional damning details of Slinker's conduct, Slinker has no basis to claim prosecutorial vindictiveness. As the court has already noted, Slinker failed to address these proper bases of the prosecutor's actions. Ultimately, the record fully supports the court of appeals' analysis as to the fact that the presumption of vindictiveness is inapplicable, and that there is no basis for a finding of actual vindictiveness. Thus, petitioner's first claim must be rejected.

## II.    Ineffective Assistance of Post-conviction Counsel

Slinker argues that his post-conviction counsel should have sought only sentence modification rather than a new trial. (Pet'n for Writ ¶ 71). Slinker also argues that post-conviction counsel failed to advise him of the negative consequences of seeking and obtaining a new trial, including the risks of new charges and a longer sentence attendant to having the original judgment vacated. (Id. ¶ 72). He also argues that post-conviction counsel was ineffective for failing to inform the sentencing court in 98-CF-434 of the interlocking nature of the previous Sheboygan sentence and the Washington County sentence, which Slinker believes would have led to the sentencing court imposing a different sentence than the one it ultimately did impose.

According to the Wisconsin Court of Appeals, the trial court found that counsel discussed the risks of a new trial with Slinker but that Slinker decided to move for a new trial. (Answer, Ex. K at ¶ 13). The trial court found counsel's testimony to be credible in the face of Slinker's testimony that he only wanted a sentence

modification and never intended to dispute his guilt. (Id.). The Wisconsin Court of Appeals did not find this determination of fact to be clearly erroneous. (*See* id.). The court of appeals concluded that counsel did not render ineffective assistance by complying with Slinker's decision and that counsel's performance was not legally insufficient simply because the strategy was unsuccessful. (Id.). Further, the court of appeals found that Slinker was not prejudiced by counsel's failure to make the interconnected-sentences argument at sentencing, because the sentencing court "rejected the contention that the Sheboygan and Washington County sentences were interrelated and the Washington County court intended only a five-year 'net' term." (Id. ¶ 15).

Beginning with the last point, this court finds that the Wisconsin Court of Appeals was correct in its analysis about the lack of prejudice stemming from counsel's failure to argue that the sentences were supposed to be interlocking. The sentencing judge clearly was aware of the fact that the previous sentences had been concurrent, he clearly took this into consideration, and he clearly rejected the notion that he should seek to replicate that scenario. (98-CF-434 Sent. Tr. at 83). Thus, Slinker was not prejudiced by counsel's failure to argue a point of which the judge was well aware.

Slinker's remaining two bases for claiming ineffective assistance of counsel ("IAC") pertain to counsel's efforts to get the initial Sheboygan County sentence overturned. Counsel testified at a *Machner* hearing, *see State v. Machner*, 285 N.W.2d 905, 908 (Wis. Ct. App. 1979) (requiring a hearing before an IAC claim can

-8-

be filed), that the strategy was to overturn Slinker's original Sheboygan sentence, then use that as a basis to attack the subsequently imposed Washington County sentence. (Post-conviction Mot. Hrg. Tr., 10/11/02, at 26-27). Slinker claims that three forms of IAC are manifest in this strategy. The first is that counsel was only hired to seek a sentence modification, thus utilization of this strategy constituted IAC. (Pet'n for Writ ¶ 71). The second is that the strategy had no hope of success, thus utilization of this strategy constituted IAC. (Id. ¶ 64). The third is that counsel failed to properly warn Slinker of the risks inherent to this strategy, thus constituting IAC. (Id. ¶ 67).

As to the notion that Slinker only wanted counsel to seek a sentence modification in the original Sheboygan case, and not a new trial, the court is not quite sure how this constitutes an IAC claim. Slinker is not arguing that he never approved the filing of the motion to set aside the original Sheboygan judgment; he is simply claiming that that is not what counsel was hired to do. Surely an IAC claim does not arise every time an attorney undertakes an action, with his client's approval, that was not what he was originally hired to do. Such an assertion makes no sense. Under this theory an individual would have to hire a new attorney every time the individual changed his mind as to what he wanted his attorney to do. Clearly that is not right. So long as Slinker agreed to seeking a new trial in Sheboygan – which he undisputedly did agree to – then counsel was fully justified in seeking such a new trial, regardless of what counsel was originally retained to accomplish.

Slinker also argues that counsel's strategy of attacking the original Sheboygan sentence constitutes IAC because it was a strategy with no prospect of success. Because the Washington County sentence was the controlling sentence (since it was for 25 years, concurrent to the original Sheboygan sentence of 20 years), any success in attacking the Sheboygan sentence would only be useful to the extent it could have an effect on the Washington County sentence. This raises the question of whether counsel's actions can constitute IAC when counsel is following the express wishes of his client. Meaning: if Slinker was adamant that counsel secure him a new trial in Sheboygan, (Post-conviction Mot. Hrg. Tr., 10/11/02, at 42, 53), yet counsel knew that securing a new trial would be pointless – either because he would certainly be convicted again, or because there was no way anything that happened in Sheboygan County could alter the Washington County sentence – then would it constitute IAC for counsel to seek to overturn the original Sheboygan County conviction? Slinker says it would constitute IAC, regardless of whether Slinker wanted a new trial or not. Respondent and the Wisconsin Court of Appeals say that if Slinker wanted a new trial, then "[c]ounsel was ethically obligated to comply with that decision and cannot be deemed ineffective for doing so." (Answer, Ex. K ¶ 13) (citing *State v. Divanovic*, 546 N.W.2d 501 (Wis. Ct. App. 1996)).

This court agrees with the Wisconsin Court of Appeals that *Divanovic* does stand for the proposition that counsel is not ineffective for pursuing a useless (though not frivolous) strategy, even when counsel knows that at the end of the day the strategy will not materially benefit the client, so long as the client has ordered

counsel to pursue that strategy. Slinker argues that the court of appeals' reliance on *Divanovic* evidences a failure to properly apply *Strickland v. Washington*, 466 U.S. 668 (1984) – the prevailing Supreme Court authority on IAC cases. (Mem. of Law Supp. Pet'n for Writ at 17). This court disagrees. *Strickland* holds that to prevail on an IAC claim, a petitioner must show that counsel's performance was deficient, and that the deficient performance prejudiced the defense. 466 U.S. at 687. Clearly, if the court of appeals found that counsel was obligated to file the motion for a new trial, then by definition his performance was not deficient. Thus, the court of appeals' decision was consistent with *Strickland*, for if counsel was not deficient, then the claim for IAC will not lie.

However, aside from the above analysis, this court finds the question of whether counsel can be deficient for pursuing a hopeless strategy to be not terribly relevant. While Slinker is right that the strategy pursued was not likely to reduce his overall jail time, he is incorrect that it was necessarily doomed to fail. As counsel pointed out, anything can happen at trial, and he believed that they had a chance at prevailing. (Post-conviction Mot. Hrg. Tr., 10/11/02, at 37-38). Slinker asserts that even if they had prevailed at re-trial in Sheboygan, this would not have benefitted him, because the Washington County sentence was controlling. (Pet'r Mem. in Resp. to 3/14/07 Order at 6). However, respondent has advanced several compelling arguments as to why Slinker's position is flawed. First, had Slinker prevailed at re-trial in Sheboygan, he could have moved to withdraw his plea in Washington County, arguing that it was not voluntary, and was only entered because

he had previously been convicted in Sheboygan. (Post-conviction Mot. Hrg. Tr., 10/11/02, at 29). Second, even if such a motion failed, respondent points out that the Department of Corrections uses factors such as the number of prior convictions, the nature of the crimes involved, and the length of sentence imposed in making placement and parole decisions. (Respd't Supp'l Br. in Resp. to 3/14/07 Order at 5). Thus, an acquittal in Sheboygan,[2] or even a reduced sentence in Sheboygan,[3] could have produced tangible benefits for Slinker, even if the Washington County sentence remained unaltered. Third, if acquitted in Sheboygan County, or if the prosecutor had simply dropped the charges, Slinker could have reasonably sought a sentence modification in Washington County. (Id. at 7) (citing *State v. Hauk*, 2002 WI App 226, ¶¶ 39-42, 652 N.W.2d 393 (when a defendant is sentenced to concurrent sentences on two convictions, the reversal of one of those convictions is a new factor for purposes of seeking modification of the remaining sentence)); (Post-conviction Mot. Hrg. Tr., 10/11/02, at 49). Thus, there were numerous ways in which counsel's strategy could have benefitted Slinker. Therefore, counsel's performance cannot be said to be deficient as a result of the pursuit of such a strategy, so long as counsel fully informed Slinker of the risks inherent to such a strategy.

---

[2] While it is evident that an acquittal would have been difficult, counsel points out that there was no guarantee that the prosecutor and victim would have been willing to go through another trial. Further, as previously mentioned, just because acquittal would have been difficult does not mean it would have been impossible.

[3] Unlike acquittal, a reduced sentence in Sheboygan was not only entirely possible, but perhaps even probable. Indeed, if the sentencing court in 98-CF-434 had found Slinker's mitigating evidence as compelling as Slinker hoped it would, Slinker would have likely received a lighter sentence than the original Sheboygan sentence.

-12-

As to whether counsel informed Slinker of the potential risks portending a motion for a new trial, this is purely a factual question. The only direct evidence on the matter is the testimony of counsel and Slinker. Counsel testified that before filing a motion for a new trial, he warned Slinker of the possible negative consequences of doing so. (Post-conviction Mot. Hrg. Tr., 10/11/02, at 36-38). Slinker testified that counsel did not inform him of the risks prior to filing the motion for new trial. (Cont'd Post-conviction Mot. Hrg. Tr., 2/11/03, at 54-56). The circuit court at which this testimony was given is, of course, the arbiter of which version is more credible. *See Johnson v. Merta*, 289 N.W.2d 813 (Wis. 1980). Typically, "a determination of a factual issue made by a State court shall be presumed to be correct." 28 U.S.C. § 2254(e)(1). This means Slinker has "the burden of rebutting the presumption of correctness by clear and convincing evidence." Id. Unfortunately, as this court pointed out in its Order dated March 14, 2007, the circuit court failed to make specific factual findings regarding which version of events – counsel's or Slinker's – was more credible. Thus, this court sought guidance from the parties as to how it should handle this lack of explicit factual finding from the circuit court regarding whether counsel warned Slinker, before filing the motion for new trial, of the risks such a motion carried. Petitioner's brief in response to the court's Order of March 14, 2007, interpreted this question of how the court should treat the lack of factual determination as a question addressed to respondent. (Pet'r Mem. in Resp. to 3/14/07 Order at 2). Petitioner presented the court with no guidance or argument on the matter, but did reserve the right to respond to respondent's submission. (Id.).

Respondent's submissions argued that while the circuit court did not make an explicit finding of credibility on the issue of whether counsel warned Slinker of the risks before filing the motion, the circuit court's determination is readily inferable (Responsive Supp. Br. of Respd't at 5). Respondent asserts:

> While the circuit court did not make an explicit finding in this regard, it is apparent and readily inferable from the circuit court's decision denying Slinker's motion for postconviction relief that the circuit court believed the attorney's account over Slinker's, both as to the content and the timing of their discussion (Exhibit H, at A-Ap. 104-05). It is apparent that the circuit court viewed the content and timing matters as of one piece and viewed the attorney's testimony as more credible than Slinker's in these joint regards. The circuit court's rejection of Slinker's ineffectiveness claim is based upon that implicit factual finding. It follows, with equal implicitness, that the circuit court found that the performance of Slinker's counsel in this respect did not fall below the level of competence and professionalism required by the Sixth Amendment's guarantee of effective representation. There is simply no other way to understand the circuit court's decision rejecting Slinker's contention that his counsel's performance had been deficient.

(Id. at 5-6).

The court agrees with respondent. The issue is a binary one: either counsel did warn Slinker of all the risks a motion for new trial entailed before he filed that motion, or he did not. If he did do so, then his performance was not deficient; if he did not do so, then his performance was clearly deficient. It could not even be argued that a failure to issue such a warning would not constitute IAC since Slinker ultimately agreed to file the motion. Such concurrence on Slinker's part would be uninformed and thus meaningless. Therefore, there is simply no way to find that counsel was not deficient without finding that counsel did inform Slinker of the risks of the strategy before undertaking it. Accordingly, the court agrees that there is

-14-

simply no other way to read the circuit court's opinion other than as implicitly finding counsel's testimony on the issue of the content and timing of the warning to be more credible than Slinker's testimony on the issue. It follows then that the Wisconsin Court of Appeals' adjudication of Slinker's claim was not "based on an unreasonable determination of facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(2).

Further, one can only assume that petitioner agrees with this assessment, as petitioner reserved the right to respond to respondent's argument on the matter, yet chose not to do so. Thus, the court has been presented with no contrary argument or theory on how the circuit court's order could be interpreted differently. Hence, the court will interpret the circuit court's order in the only manner in which it makes sense – as finding that counsel did warn Slinker of the risks of a motion for new trial before counsel filed that motion. As long as such a warning was given, counsel was not deficient for filing the motion, for the motion could indeed have rendered some, if not substantial, benefit to Slinker.

III.    **Sentencing**

Slinker argues that the 20-year consecutive sentence imposed in 98-CF-434 is harsher than his original sentence in his prior Sheboygan case (95-CF-190). Slinker argues that the new sentence effectively increases his prison term from 25 to 45 years. He asserts that the harsher sentence imposed in 98-CF-434 violates due process and is presumptively vindictive. (Pet'n for Writ ¶ 82).

As a starting point, the court notes that all the parties involved – petitioner, respondent, and the Wisconsin Court of Appeals – appear to be in agreement that the second sentence imposed in Sheboygan was harsher than the first sentence imposed in Sheboygan. This court would agree with that premise, but only to a limited extent. Clearly, the 20-year term of probation that Slinker received at the second sentencing was harsher than the 10-year term Slinker received at the first sentencing. However, equally clearly, the main thrust of Slinker's argument is that the consecutive nature of the 20-year imprisonment term imposed in the second sentencing makes it harsher than the 20-year prison term imposed at the first sentencing. The court rejects that notion.

The sentencing court in 95-CF-190 sentenced Slinker to 20 years imprisonment for the trespasses he committed against his daughter Jessica. Afterwards, and wholly separately, the sentencing court in 95-CF-274 (Washington County) sentenced Slinker to 25 years imprisonment for the trespasses he committed against his daughter Britney. However, the Washington County court directed that that term should be served concurrent to the sentence rendered in 95-CF-190, thus meaning, as it stood at that time, that Slinker's crimes against Britney only netted him 5 years in prison. The determination by the Washington County court to make its sentence concurrent to the Sheboygan court's sentence was entirely within the discretion of the Washington County court. Thus, the concurrent nature of the two sentences was in no way a characteristic deriving from the sentence imposed in 95-CF-190 by the Sheboygan court.

After Slinker succeeded in overturning the sentence in 95-CF-190, he then ultimately returned before a different Sheboygan County Circuit Court to be resentenced on the same charges as those he had been sentenced on in 95-CF-190. In regards to the amount of prison time, the sentencing court in the second Sheboygan sentencing (98-CF-434), imposed the exact same sentence as the previous Sheboygan court (95-CF-190) imposed, 20 years in prison for trespasses Slinker committed against Jessica. The sentencing judge in 98-CF-434 was aware that if he made the sentence concurrent to the Washington County sentence, then it would only be in an abstract sense that Slinker was in prison for what he did to Jessica. It is clear from the sentencing transcript that the court did not think that would sufficiently serve the goals of trying to make Jessica whole again or of serving as a general deterrent. Indeed, the court stressed that part of the healing process for Jessica was to know just how seriously society takes what happened to her, and the way society conveys that message is by the sentence imposed on her assailant. (98-CF-434 Sent. Tr. at 80-81). Thus, just as in the first Sheboygan sentencing, the judge ordered that Slinker should spend 20 years in prison for what he did to Jessica. To make it so that those 20 years were but for the wrong done to Jessica, the court ordered the term consecutive to Slinker's Washington County sentence. While this sentence (a net term of 20 years for the crimes against Jessica) was harsher than the sentence imposed by Washington County (a term that at the time was a net term of 5 years for the crimes against Britney), it was not in any way harsher than the sentence imposed in the first Sheboygan sentencing (a net

term of 20 years for the crimes against Jessica).  Thus, it is factually inaccurate to say that the sentencing court in 98-CF-434 imposed a harsher prison sentence than the sentencing court in 95-CF-190; it imposed the exact same prison sentence.[4]

The only sense in which the sentence Slinker received in 98-CF-434 was harsher than that received in 95-CF-190 is in regards to the term of probation. Undoubtedly, a term of 20 years probation is harsher than a term of 10 years probation.  However, the conditions of Slinker's probation are by no means onerous. The conditions are as follows:

> No contact with Jessica or Gosh Family, unless Jessica wishes to have contact with her father, at which time she may initiate that contact through Probation and Parole.  No unsupervised contact with underage females.  No drugs unless prescription.  No alcohol.

(Answer, Ex. C).  With such minimal probationary conditions, one can hardly say that doubling the length of time such conditions are in place constitutes a sentence substantially harsher than the previously imposed sentence.  To the extent that it is harsher, the sentencing court in 98-CF-434 gave a thorough explanation of why it was being done.  The court explained just how gravely traumatic Slinker's actions were for Jessica.  (98-CF-434 Sent. Tr. at 74-76). The court further explained how troubling it found the fact that Slinker engaged in these actions time and again, and only ceased because he was caught, and not because he ever decided to do the right thing.  (Id. at 82-83).  Thus, the court determined that Slinker needed continued

---

[4]The court in 98-CF-434 also imposed a 25-year term that was stayed.  Because it was stayed, it did not increase by a single day the amount of time Slinker would spend in prison, thus the court does not address it in its analysis comparing the original Sheboygan sentence to the second Sheboygan sentence.

Case 2:06-cv-00390-JPS   Filed 09/17/09   Page 18 of 23   Document 51

monitoring by Probation and Parole "for a long, long time." (Id. at 83). Accordingly, the court imposed a probation term of 20 years, not because it was being vindictive, but because that was the best way to protect the public from Slinker, and Slinker from himself, given the fact he had demonstrated a propensity for such damaging behavior, and an unwillingness to cease such behavior once it had begun.

This court is confident that the sentence imposed in 98-CF-434 is only harsher in terms of the probationary period – and that even then it is only "harsher" in a technical sense, as the terms of the probation are not onerous – and that the court explained its rationale for imposing a lengthier probationary period. However, confidence does not equal certainty. It may well be that another court would find the above analysis as to the substantial similarity of the two sentences to be mistaken. Having this in mind, the court will further analyze Slinker's claim within the rubrick of the assumption that the sentence imposed in 98-CF-434 was more severe than that imposed by the court in 95-CF-190.

Even though a presumption of vindictiveness arises when a court imposes a more severe sentence after the defendant wins a new trial, (Answer, Ex. K at ¶ 20) (citing *Wasman v. United States*, 468 U.S. 559, 564-65 (1984)), the Wisconsin Court of Appeals determined that the presumption did not apply in this case because "it was the trial court itself that granted Slinker's motion for a new trial and no motivation to act vindictively exists." (Answer, Ex. K at ¶ 20) (citing *Texas v. McCullough*, 475 U.S. 134, 138-39 (1986)). Even if a presumption of vindictiveness applied, the court of appeals further concluded objective information supported the increased

Case 2:06-cv-00390-JPS   Filed 09/17/09   Page 19 of 23   Document 51

sentence. Specifically, the sentencing court appropriately considered the petitioner's Washington County conviction obtained in the interim between the original sentence and the sentencing after a new trial was granted.[5] The sentencing court also appropriately considered the additional charges in assessing the seriousness of offenses. (Answer, Ex. K at ¶ 21). The court of appeals also determined that the petitioner had not met his burden of demonstrating actual vindictiveness. (Id. at ¶ 22). The court of appeals determined that the sentencing remarks reflect a proper exercise of discretion and noted that the sentencing court explained that it was not considering that Slinker had been granted a new trial. (Id.).

The Wisconsin Court of Appeals was correct in finding that no presumption of vindictiveness attaches to the new sentence. The Supreme Court has made it clear that when the the judge that imposed the new sentence is not the same judge that imposed the original sentence,[6] the presumption is inapplicable. *See McCullough*, 475 U.S. at 140 ("The presumption is . . . inapplicable because different sentencers assessed the varying sentences that McCullough received.").[7] As the court explained in *McCullough*:

---

[5]At the first sentencing, the court was informed that Slinker was charged in Washington County and that the case was going to be resolved by a plea, but that had not yet occurred. (Answer, Ex. K at ¶ 21). The court of appeals wrote that "Slinker was charged in Sheboygan County," (id.), but presumably, the court intended to write that "Slinker was charged in Washington County."

[6] The original sentence was imposed by Judge Van Akkeren; the new sentence was imposed by Judge Murphy.

[7] Apparently, *North Carolina v. Pearce*, 395 U.S. 711 (1969) – the case in which the Court promulgated the prophylactic "presumption of vindictiveness rule" – involved two different sentencing judges. However, the Court makes it clear in *McCullough* that it appears the Court was unaware of this at the time it decided *Pearce*, and that *Pearce* does not govern this issue. *McCullough*, 475 U.S. at 140 n. 3.

In such circumstances, a sentence "increase" cannot truly be said to have taken place. In *Colten v. Kentucky* . . . which bears directly on this case, we recognized that when different sentencers are involved,

> "[i]t may often be that the [second sentencer] will impose a punishment more severe than that received from the [first]. But it no more follows that such a sentence is a vindictive penalty for seeking a [new] trial than that the [first sentencer] imposed a lenient penalty." *Id.*, 407 U.S., at 117.

475 U.S. at 140.

The *McCullough* Court also explained that where the initial sentence is overturned by the court that presided over the trial, there is no basis for a presumption of vindictiveness, because "unlike a judge who has been reversed," such a judge has "no motivation to engage in self-vindication." *Chaffin v. Stynchombe*, 412 U.S. 17, 27 (1973) (quoted in *McCullough*, 475 U.S. at 139). This ruling is not directly applicable to the instant case, since the second sentence was entered by a different judge than the first sentence. However, the ruling is applicable to the extent that it shows that there would be no basis for presuming vindictiveness based on the notion that the second judge imposed a more severe sentence in order to vindicate a colleague. Given the facts of the instant case, as well as the above rulings from *McCollough*, it is clear that the Wisconsin Court of Appeals was correct to find that there should be no presumption of vindictiveness on the part of the sentencing court in 98-CF-434. This means that petitioner would have to show actual vindictiveness in order to prevail on his claim. As the court of appeals articulated, there is no indication of any actual vindictiveness. The sentencing court

stated that it was not considering the fact that Slinker had been granted a new trial, and the sentencing court explained the rationale behind the sentence it imposed. Furthermore, there is no indication that the sentencing court ignored the mitigating evidence Slinker presented at trial. Ultimately, the sentencing court simply did not find such evidence as sufficiently compelling as Slinker had hoped. Slinker seems to think that the fact he went to counseling in prison means that he should not have to serve a separate prison sentence for each daughter he sexually assaulted; the sentencing court simply disagreed. It is within its discretion to do so; exercise of that discretion, especially when coupled with explanation, can in no way be deemed actual vindictiveness. Thus, Slinker's third claim in his habeas petition must be rejected.

## CONCLUSION

Slinker's prosecutorial vindictiveness claims fail because Slinker offered no rebuttal to the prosecutor's legitimate explanations for why he filed additional charges during the second Sheboygan prosecution, and for why he recommended a longer sentence at the second Sheboygan sentencing. Slinker's IAC claims fail because Slinker agreed to seek a new trial; seeking a new trial could have benefitted Slinker, and the circuit court's determination that counsel warned Slinker of the risks of seeking a new trial did not constitute an unreasonable determination of the facts in light of the evidence presented. Lastly, Slinker's claims stemming from the sentencing fail because the sentencing transcript showed that the court considered all the evidence, properly exercised its discretion, and explained its rationale.

Additionally, the sentence imposed was only harsher in terms of the probationary period imposed. Furthermore, the sentencing judge was a different judge than the one that imposed the original sentence in Sheboygan.

Accordingly,

**IT IS ORDERED** that the petitioner's Petition for Writ of Habeas Corpus (Docket #1) be and the same is hereby **DENIED**;

**IT IS FURTHER ORDERED** that this action be and the same is hereby **DISMISSED**.

The clerk of court is directed to enter judgment accordingly.

Dated at Milwaukee, Wisconsin, this 17th day of September, 2009.

BY THE COURT:

J.P. Stadtmueller
U.S. District Judge

Case 2:06-cv-00390-JPS   Filed 09/17/09   Page 23 of 23   Document 51